UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20321-CIV-LENARD/GARBER

R.L. and S.L., individually and on behalf
of O.L., a minor,
    Plaintiffs,

v.

MIAMI-DADE COUNTY SCHOOL BOARD,
    Defendant.
_____/

## ORDER

THIS CAUSE is before the Court by Order of Reference of United States District Judge Joan A. Lenard. Pursuant to such reference, the Court has received the plaintiff parents' Motion for Attorneys' Fees and Costs (DE 195); the defendant school board's response (DE 201); and the parents' reply thereto (DE 204). The Court hereby GRANTS the parents' motion, subject, however, to certain reductions as further explained below.

**I.    Background**

The school board, on October 5, 2006, filed a request for an administrative due process hearing for a determination of whether an Individualized Education Plan ("IEP") developed in May 2006 provided R.L. and S.L.'s son, O.L., a free appropriate public education under the Individuals with Disabilities Education Act ("IDEA"). (ALJ's Final Order, DE 1-1, 2.) In addition to a response to the school board's petition, the parents also filed their own counter-petition, claiming that the school board failed to provide a free appropriate public education to O.L. (*Id.* at 4.) Among the parents' complaints were that Palmetto Senior High School was not an appropriate placement for O.L., (*Id.* at 91), and that the school board violated a number of substantive and procedural

requirements, (*Id.* at 47-48, 50-51). One of he parents' main contentions, however, as articulated by the administrative law judge, was that O.L. should be placed at MAST Academy. (*Id.* at 89).

Based on the evidence presented to him, the administrative law judge determined that the IEP indeed failed to adequately address O.L.'s needs but with respect to only two discreet substantive issues: O.L.'s susceptibility to stress and sensory overload; and his needs in reading. (*Id.* at 114). Because of these shortcomings, the administrative law judge concluded that the IEP did not provide O.L. with a free appropriate public education in those respects. (*Id.*) The administrative law judge found that the remainder of the May 2006 IEP, however, did provide O.L. with a free appropriate public education. (*Id.* at 88.) Additionally, he determined that there was no evidence of a material violation of any procedural requirements. (*Id.* at 79.) Lastly, the administrative law judge concluded that it was not necessary for O.L. to be placed at MAST Academy and that placing O.L. at Palmetto would not deprive him of a free appropriate public education. (*Id.* at 89, 91.) Magistrate Judge Edwin. G. Torres later recommended that the administrative law judge's conclusion regarding Palmetto be reversed and that the issue of O.L.'s placement be remanded.[1] (Rep. and Rec., DE 43, 62.) Judge Torres concluded that the school board's decision to place O.L. at Palmetto violated the IDEA, both procedurally and substantively. (*Id.* at 62.) Procedurally, as set forth in Judge Torres's report and recommendation, the school board violated the IDEA by predetermining O.L.'s placement at Palmetto before it had developed the IEP. (*Id.* at 46.) And substantively, the school board violated the IDEA because O.L's placement at Palmetto prevented him from obtaining a free appropriate public education. (*Id.* at 58.) Aside from these two issues, Judge Torres recommended affirming the administrative law judge's decision in all other pertinent respects. Additionally, this Court's report

---

[1] Judge Torres's report and recommendation was adopted by the district court on August 12, 2008. (DE 57.)

and recommendation, recommending that the parents be awarded $58,936.35 in reimbursements, based upon an evidentiary hearing before the Court, as well as upon the findings of both the ALJ and Judge Torres, was adopted by Judge Lenard. (Order. DE 225.)

In sum then, between the administrative law judge's decision, Judge Torres's and the district court's review of that decision, and this Court's findings, adopted by the district court, the parents ultimately lost on: most of their procedural violation claims; their contention that O.L. should be placed at MAST Academy; and certain aspects of their claim that the May 2006 IEP failed to provide O.L. with a free appropriate public education. The parents prevailed, however: in establishing that the May 2006 IEP failed to provide a free appropriate public education with respect to two substantive aspects; on their contention that the school board failed to provide a free appropriate public education by placing O.L. at Palmetto; on their claim that the school board improperly predetermined O.L.'s placement at Palmetto; and on their claim that, based on the school board's failure to provide a free appropriate public education, they are entitled to some reimbursement of their expenses.

The fees currently under consideration by the Court are those that were incurred in relation to the underlying administrative hearing. The reasonableness of the fees sought will be determined based on the degree of success that the parents ultimately obtained as a result of those efforts.

II.     **The Parents' Request for Fees and Costs**

The parents seek a total of $128,767.50[2] in attorneys' fees for amounts incurred with respect

---

[2]On page three of their motion, the parents state that they are requesting $128,767.50 in fees. (Motion, DE 195, 3.) But in their final request for fees on page twelve of that same motion, the parents ask for a fee award of $157,800. (*Id*. at 12.)  The sum of the amounts requested by Liles in his affidavit for the relevant time period is also $157,800. (Affidavit, DE 195-1, 11.) Rather than waste judicial resources on trying to divine what amount the parents are actually requesting, the Court will assume that they are asking for the lowest amount: $128,767.50.

to the administrative proceedings between April 12, 2006 and January 9, 2007.[3] (Motion, DE 195, 3.) According to the parents' motion, their attorney, Paul Liles, billed 185.2 hours prior to the filing of the school board's due process complaint and 387.1 hours between the filing of the complaint and the issuance of the ALJ's order. (*Id.*) Liles's rate at the time was $225 an hour.[4]

The parents additionally request a total of $9,617.76 in costs.[5] According to the parents' motion, the costs incurred were for: copies, travel fees, overnight delivery, tolls and parking fees, postage, transcripts, and airline tickets for a deposition in Washington D.C.

A.      **Prevailing Party Status**

The school board does not appear to object to the parents' status as the prevailing party under 20 U.S.C. § 1415(i)(3)(B)(i)(I). Although the school board describes, at length, the analysis a court should apply in determining whether a party has attained prevailing party status, the school board never actually applies that analysis to the parents' claim for fees. (Response, DE 201, 5-8.) Instead, the school board contends that the parents are not entitled to a fee award because they did not actually benefit "from any relief granted by the Court." (*Id.* at 11.) The school board's focus in this regard is the parents' decision not to return O.L. to school. Ultimately, however, the parents were awarded a substantial reimbursement of the reasonable costs they incurred in providing educational

---

[3] In its November 3, 2010 order, the Court bifurcated the issue of attorneys' fees incurred in the administrative proceeding and fees incurred in the court action. This order then addresses only the fees incurred in the administrative proceeding. (Order, DE 147, 5.)

[4] According to Liles's affidavit, his hourly rates ranged from $225 to $300 during the time period at issue. Due to an "accounting error," (Reply, DE 204, 5), however, his bills reflect only the $225 rate and that is the rate referred to in the parents' motion. The Court will use the $225 rate in calculating the parents' fee award.

[5] While the parents request $9,617.76 in costs in their motion (Motion, DE 195, 4), Liles's affidavit states that taxable costs amount to $13,211.51 (Affidavit, DE 195-1, 13). The Court will assume that $9,617.76 is the amount that is actually being requested.

services to their child. This award was the result of the parents' efforts at the administrative level, combined with the results of the parents' appeal of aspects of the administrative decision and complaint in federal court. The school board's notion that the parents somehow received no benefit because they chose not to return their child to school is misguided. The parents effected meaningful relief and they are therefore entitled to a fee award, the amount of which depends on a determination of the degree of their success. *See, e.g., Linda T. v. Rice Lake Area School Dist.*, 417 F.3d 704, 708 (7th Cir. 2005)(applying the Supreme Court's reasoning in *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) to the IDEA's fee-shifting provision and noting that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained'"). As a threshold matter then, the Court finds that the parents are the "prevailing party" and are thus entitled to an award of "<u>reasonable</u> attorneys' fees" under 20 U.S.C. § 1415(i)(3)(B)(i)(I). (Emphasis added).

### B.  Fees and Costs Not Incurred in any Action or Proceeding Brought Under the IDEA

The Court has discretion to award attorneys' fees as part of the costs "[i]n any action or proceeding brought under [the IDEA]." 20 U.S.C. § 1415(i)(3)(B)(I). By its plain meaning, the IDEA does not contemplate the awarding of fees for efforts that are not involved in, or at least related to, an "action or proceeding brought under [the IDEA]." *Id*. In that regard, the Court looks to see if the legal services provided were both "useful and of a type ordinarily necessary" to further the proceedings that, with respect to this motion, took place at the administrative level. *See Webb v. Bd. of Educ. of Dyer County*, 471 U.S. 234, 243 (1985).

Although the parents claim that Liles "exercised 'billing judgment'" and "meticulously reviewed the billing records and excluded that which is not properly taxed against the [the school board]," they do not explain why time expended during the five months prior to the school board's

due process filing should be awarded. (Motion, DE 195, 9.) In fact, Liles himself, in his affidavit, differentiates between the time period prior to the due process filing and the time period after. He says that before the school board's petition, he "provided consultation services," as opposed to afterwards, when he rendered services "for litigation of this matter." (Affidavit, DE 195-1, 10-11.) Neither the parents in their motion, nor Liles in his affidavit, make any suggestion that work product from before the administrative proceeding, or any discrete portion thereof, "was work that was both useful and of a type ordinarily necessary to advance" the administrative process to its ultimate outcome. *Webb*, 471 U.S. at 243. Since the parents and Liles neglected to differentiate between time spent on matters that were ultimately necessary to the administrative proceeding, if any, and time spent that wasn't, the Court will not award any fees for services performed prior to the school board's filing on October 5, 2006. The parents have failed to controvert the school board's argument that these fees are unrelated to the administrative hearing. Thus that portion of the fee request, that is $41,670.00 (or 185.2 hours at $225 an hour), is <u>not</u> compensable because the parents did not carry their burden of establishing that the fees were incurred "in any action or proceeding brought under [the IDEA]."

With respect to the costs associated with this time period, the school board also objects. Upon its own investigation of the documentation submitted,[6] the Court finds that the costs claimed for periods prior to the commencement of the administrative proceeding and after its termination are denied. The parents have not carried their burden of establishing that the following costs were

---

[6] Neither party broke down or summarized which expenses were associated with which time period. The parents, in their motion, simply refer the Court to two composite exhibits, which span 61 pages, to support their claim for costs. The figures are especially challenging to reconcile since the parents' motion and Liles's affidavit state different totals. The school board, in turn, objected to all the costs without differentiating between those incurred before and those incurred after the filing of the school board's petition.

reasonably incurred to further the ultimate outcome at the administrative level:

| Date | Expense | Amount |
|---|---|---|
| 06/14/2006 | transcript | $600.00 |
| 06/20/2006 | photocopies | $20.00 |
| 06/19/2006 | tolls and parking | $12.00 |
| 07/18/2006 | transcript | $400.00 |
| 07/31/2006 | photocopies | $1.40 |
| 07/31/2006 | travel | $140.28 |
| 08/03/2006 | travel | $140.39 |
| 08/31/2006 | photocopies | $2.00 |
| 09/06/2006 | travel | $296.39 |
| 09/26/2006 | travel | $139.39 |
| 09/30/2006 | photocopies | $.80 |
| 10/02/2006 | travel | $219.86 |
| 01/22/2007 | overnight delivery | $14.72 |
| 01/22/2007 | overnight delivery | $31.21 |
| 01/22/2007 | overnight delivery | $29.24 |
| 01/24/2007 | photocopies | $882.29 |
|  | **TOTAL**: | **$2,929.97** |

While some of these costs might have been incurred for items that were ultimately compensable and necessary to the advancement of the administrative proceedings, although many appear not to be, they were incurred either prior to the filing of the school board's petition or after the administrative proceedings had been concluded. Based on the time frame in which these expenses were incurred, the parents have failed to provide the Court with enough, or really any, information that would allow it to make a determination regarding necessity or reasonableness. The parents' conclusory statements regarding the reasonable and customary nature of the costs incurred, without more, is insufficient

to establish their entitlement to these costs considering when the expenses were incurred.

The Court advises counsel that, in the future, if costs and fees are requested or disputed, they should be specifically and precisely supported or opposed so that the Court doesn't have to spend its own resources piecing together what the parties should have properly presented in their filings in the first place.

      C.     *Johnson* **Factors**

After subtracting the 185.2 hours that are not compensable, as described in the preceding section, the parents remaining fee request amounts to 387.1 hours (or, at a rate of $225 an hour, $87,097.50). In determining the reasonableness of this request, the Court may consider the lodestar factors as enumerated in *Johnson v. Georgia Highway Express*: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d 714, 717-19 (5th Cir. 1974).

In considering these factors, the Court notes the school board's complaint that Liles billed an inordinate amount of time for organizing and preparing exhibits for the due process hearing, as well as similar tasks. (Response, DE 201, 13.) According to the school board, as many as perhaps 98.70 hours were billed to such endeavors. (*Id*. at 13-14.) The school board argues that these hours should be reduced "to a reasonable number of hours" and then billed at "paralegal rates" rather than at Liles's rate. (*Id*. at 14.) The parents failed to rebut the school board's argument on this point.

Furthermore, the Court, based also on its own assessment of the billing record in the case and based on its own knowledge, experience, and expertise, finds merit in the school board's allegations. Thus in terms of the labor required, many of Liles's time entries appear to be for work that could have been performed by a non-lawyer. Additionally, the Court finds that the amount of time spent on such tasks and similar undertakings was inordinate.

Likewise, the Court agrees with the school board that Liles spent excessive amounts of time drafting, reviewing, and revising the proposed final order in the administrative case. It appears from Liles's billing records that as many as 158.8 hours may have been devoted to that task. The Court finds this to be unwarranted. In light of these issues, and the absence of any *Johnson* factors that might militate in favor of a contrary finding, the Court finds the parents fee request unreasonable and that an across-the-board reduction to the hours billed of 50% is warranted in order to arrive at a reasonable number. The lodestar amount then is $43,548.75 (193.55 hours at $225 an hour).[7]

D.   **Degree of Success**

A reduction to the lodestar is merited in this case because the parents were only partially successful in their efforts at the administrative level. *Bivins v. Wrap It Up, Inc.*, 548 f.3d 1348, 1352 (11th Cir. 2008) (finding that a downward adjustment may be warranted if the prevailing party was not successful on all claims). As more fully described above, in Section I, the parents succeeded on some claims but failed on many others. Despite indisputable evidence to the contrary, the parents steadfastly maintain that they were "100% successful." (Reply, DE 204, 4.) At the opposite end of the spectrum, and equally unreasonable, the school board insists that the parents did not effect any

---

[7] The parties do not dispute that $225 an hour is a reasonable hourly rate.

meaningful relief at all. (Response, DE 201, 10.)[8]

Ultimately, while the parents eventually obtained substantial relief, they also spent a sizeable portion of their efforts at the administrative level on claims that went nowhere. And although the Court agrees with the parents, to an extent, that they obtained significant relief, the parents also unnecessarily protracted the proceedings below by raising an undue number of meritless claims. For example, the parents alleged that the school board materially violated numerous procedural requirements, none of which the administrative law judge found to have merit and only one of which the district court found to have merit. The parents also spent an inordinate amount of time insisting that O.L. should be placed at MAST Academy. This argument fell short at both the administrative level as well as in the district court. While the Court does not mean to minimize the positive results that the parents obtained, and while the Court understands that some of the issues were intertwined and overlapping, at the same time, it cannot overlook the fact that the parents were only partially successful.

The Court finds that much of the work spent on the unsuccessful procedural and substantive claims was not expended in pursuit of the ultimate results achieved. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Thus in contemplating the administrative hearing as a whole, and the relief finally obtained in federal court, as a result, in part, of the efforts at the administrative level, the Court finds that a fee award of only 75% of the lodestar is reasonable. That is, in adjusting the lodestar to take into account the parents' partial success, the parents are awarded **$32,661.56** (75% of $43,548.75) in attorneys' fees.

---

[8]The Court points out that it is just this sort of hyperbole, exhibited by both parties, that has exacerbated this litigation from, it seems, the beginning.

### E. Costs Requested for the Relevant Time Period

In addition to the costs requested for expenses incurred outside the relevant time period, as discussed above in section II.B., the parents have also asked for costs incurred during the administrative proceedings. In requesting costs, the parents cite to *Dowdell v. City of Apopka*, 698 F.2d 1181 (11th Cir. 1983) in support of their claim that they should be awarded amounts for costs incurred that are not authorized by 28 U.S.C. § 1920. In doing so, the parents have disregarded United States Supreme Court precedent that mandates a contrary result. Aside from attorneys' fees, the governing provision of the IDEA, 20 U.S.C. § 1415(i)(3)(B), does not otherwise expand the list of recoverable costs beyond those set forth in 28 U.S.C. § 1920. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297-98 (2006).[9]

> Section 1920 provides the following list of taxable costs:
>
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Any costs that are not specifically listed are not taxable. Thus, as an initial matter, charges for: "travel fees," "overnight delivery," "tolls and parking fees," "postage," and "airline tickets, deposition in Washington, D.C" are not taxable costs. The Court will therefore not award

---

[9]Although the parents' motion cites the *Murphy* case for the proposition that "[t]axable costs are set forth in 28 U.S.C. section 1920," counsel appears not to have read the case, which would explain why the referenced pincite is to a page in the syllabus which, of course, is not actually part of the opinion. If counsel had read the Supreme Court's opinion in *Murphy*, counsel would have realized that it's reliance on *Dowdell* is misplaced.

the amounts requested for any of these items.

The only remaining, possibly compensable, costs, then, are for:

| Date | Expense | Amount |
| --- | --- | --- |
| 10/31/2006 | copies | $444.60 |
| 11/27/2006 | copies | $585.44 |
| 10/20/2006 | transcripts | $2,774.08 |
|  | **TOTAL** | **$3,804.12** |

While these costs are initially presumed to be taxable, the Court must still exercise its discretion by assessing such costs only where they are "necessarily obtained for use in the case," 28 U.S.C. § 1920, and in an amount that is reasonable. The Court is satisfied that the parents have adequately responded to the school board's objection to the taxing of the transcript costs that were incurred after the filing of the school board's due process petition. (Reply, DE 204, 5-6.) As explained in their reply, the parents needed these transcripts in order to establish what did and did not occur at certain IEP meetings. (*Id*.) The invoice for these particular transcripts is dated just over two weeks after the school board filed its petition which would further support the parents' claims that they were reasonably and necessarily obtained for use in the administrative proceedings. In contrast, the parents never addressed the school board's objections to their claim for reimbursement for the above-listed copying expenses. While the conclusory statements in Liles's affidavit and in the parents' motion regarding taxable copies might have been sufficient in support of an unopposed motion, such support falls short in the face of the school board's challenge to the necessity and reasonableness of such costs. The parents have not specified what the copies were for much less why they were necessary: one entry reads simply, "photocopies for this billing cycle"; and the other says only, "copies of records/documents." In sum, the only properly taxable cost claimed by the parents is the amount

requested for transcripts invoiced on October 20, 2006: $2,774.08.

III.    **Conclusion**

O.L.'s parents were the prevailing parties in the administrative proceedings underlying this case and as such are entitled to recover fees and costs from the school board under 28 U.S.C. § 1415(i)(3)(B)(i). Based on the issues and factors outlined above, however, their requests for $128,767.50 in fees and $9,617.76 in costs are reduced to $32,661.56 and $2,774.08, respectively.

Accordingly it is ORDERED that:

1.  The parents Motion for Attorneys' Fees and Costs (DE 195) is GRANTED, subject to the reductions as described above; and

2.  The parents shall recover from the school board **$35,435.64** in fees and costs.

DONE AND ORDERED in Chambers at Miami, Florida this 26th day of April 2012.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE