UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20321-CIV-LENARD/GARBER

R.L. and S.L., individually and on behalf
of O.L., a minor,
        Plaintiffs,

v.

MIAMI-DADE COUNTY SCHOOL BOARD,
        Defendant.
_____/

## ORDER

THIS CAUSE is before the Court by Order of Reference of United States District Judge Joan

A. Lenard. Pursuant to such reference, the Court has received the plaintiff parents' Motion for

Attorneys' Fees and Costs (DE 239); the defendant school board's response (DE 243); and the

parents' reply thereto (DE 247). The plaintiffs also submitted a bill of costs, representing the same

expenses requested in their motion. (DE 231.) The Court hereby GRANTS the parents' motion and

bill of costs, subject, however, to certain reductions as further explained below.

## I.   Background

The Miami-Dade County school board, on October 5, 2006, filed a request for a state-level

administrative due process hearing for a determination of whether an Individualized Education Plan

("IEP") developed in May 2006 provided R.L. and S.L.'s son, O.L., a free appropriate public

education under the Individuals with Disabilities Education Act ("IDEA"). (ALJ's Final Order, DE

1-1, 2.) In addition to a response to the school board's petition, the parents also filed their own

counter-petition, claiming that the school board failed to provide a free appropriate public education

to O.L. (*Id.* at 4.) Among the parents' complaints were that Palmetto Senior High School was not

an appropriate placement for O.L., (*Id.* at 91), and that the school board violated a number of substantive and procedural requirements, (*Id.* at 47-48, 50-51). One of the parents' main contentions, as articulated by the administrative law judge, was that O.L. should be placed at MAST Academy. (*Id.* at 89).

Based on the evidence presented, the administrative law judge determined that the IEP indeed failed to adequately address O.L.'s needs but with respect to only two discreet substantive issues: O.L.'s susceptibility to stress and sensory overload; and his needs in reading. (*Id.* at 114). Because of these shortcomings, the administrative law judge concluded that the IEP did not provide O.L. with a free appropriate public education in those respects. (*Id.*) The administrative law judge found that the remainder of the May 2006 IEP, on the other hand, did provide O.L. with a free appropriate public education. (*Id.* at 88.) Additionally, he determined that there was no evidence of a material violation of any procedural requirements. (*Id.* at 79.) Lastly, the administrative law judge concluded that it was not necessary for O.L. to be placed at MAST Academy and that placing O.L. at Palmetto would not deprive him of a free appropriate public education. (*Id.* at 89, 91.)

The plaintiffs thereafter sought relief in the United States District Court where the review of the administrative decision was bifurcated from the parents' claims for damages and fees. With respect to issues related to the administrative decision, the parents raised a multitude of procedural and substantive issues, only two of which were found by United States Magistrate Judge Edwin. G. Torres to have merit. To that end, Judge Torres recommended that the administrative law judge's conclusion regarding Palmetto be reversed and that the issue of O.L.'s placement be remanded. (R&R, DE 43, 62.) Judge Torres concluded that the school board's decision to place O.L. at Palmetto violated the IDEA, both procedurally and substantively. (*Id.* at 62.) Procedurally, he found, the

2

school board violated the IDEA by predetermining O.L.'s placement at Palmetto before it had developed the IEP. (*Id.* at 46.) And substantively, the school board violated the IDEA because O.L's placement at Palmetto prevented him from obtaining a free appropriate public education. (*Id.* at 58.) In all other pertinent respects, Judge Torres recommended affirming the administrative law judge's decision. Judge Torres's report and recommendation was thereafter adopted by the district court on August 12, 2008. (Order, DE 57.)

The parties then appeared before this Court for a determination of the parents' entitlement to monetary relief and attorneys' fees. Pursuant to Judge Lenard's referral in this regard, the Court held an evidentiary hearing regarding the plaintiffs' claims for reimbursement for educational and Medicaid expenses, and compensatory education. The parents initially demanded over $1 million for "compensatory education"; "prospective educational services"; and "educational and tutoring expenses and fees." (Pl.'s Disclosures, DE 96, 2-3.) The district court affirmed this Court's recommendation that the parents be awarded $48,326.35 to compensate them for various educational expenses that they have already incurred. This Court further awarded $35,435.64, out of the $138,385.26 sought, in attorneys' fees and costs reasonably incurred in the handling of the administrative proceedings below. The plaintiffs' request for further awards were denied in their entirety.

To summarize, in pursuing their claims in the district court, to date, the parents have ultimately lost on: most of their procedural violation claims; their contention that O.L. should be placed at MAST Academy; many aspects of their claim that the May 2006 IEP failed to provide O.L. with a free appropriate public education; most of their claims for fees and costs in the administrative proceedings; and the vast majority of their claim for damages. The parents prevailed, however: in

establishing that the May 2006 IEP failed to provide a free appropriate public education with respect to two substantive aspects; on their contention that the school board failed to provide a free appropriate public education by placing O.L. at Palmetto; on their claim that the school board improperly predetermined O.L.'s placement at Palmetto; on a small portion of their claim for fees and costs in the underlying action; and on relatively insignificant portion of their claims for damages and expenses, based on the school board's failure to provide a free appropriate public education.

The fees currently under consideration by the Court are those that were incurred in relation to the litigation before the federal district court. The reasonableness of the fees sought will be determined  based on the degree of success that the parents ultimately obtained as a result of those efforts.

## II.   The Parents' Request for Fees and Costs

The parents seek a total of $348,134.50 for efforts expended by their attorneys and staff related to the action before the district court, beginning in January 2007 through October 2012.[1] This total represents the work of thirteen attorneys, one law clerk, and two paralegals, from a total of four different law firms.

The parents additionally request $12,202.31 in costs. According to the parents' motion, the costs incurred were for: copies, travel fees, overnight delivery, tolls and parking fees, postage, transcripts, clerk and filing fees, faxes, courier fees, research costs, depositions, and printing–distributed amongst four different law firms.

---

[1]In its November 3, 2010 order, the Court bifurcated the issue of attorneys' fees incurred in the administrative proceeding and fees in the district court action. The administrative fees having already been addressed, this order then addresses only the fees incurred in relation to the district court action.

4

A.      **Prevailing Party Status**

The school board concedes that, based on findings before the district court, the plaintiffs are the prevailing party under 20 U.S.C. § 1415(i)(3)(B)(i)(I). (Response, DE 243, 1.) The parents effected at least some meaningful relief and they are therefore entitled to a fee award, the amount of which depends on a determination of the degree of their success. *See, e.g., Linda T. v. Rice Lake Area School Dist.*, 417 F.3d 704, 708 (7th Cir. 2005)(applying the Supreme Court's reasoning in *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) to the IDEA's fee-shifting provision and noting that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained'"). As a threshold matter then, the Court finds that the parents are the "prevailing party" and are thus entitled to an award of "<u>reasonable</u> attorneys' fees" under 20 U.S.C. § 1415(i)(3)(B)(i)(I). (Emphasis added).

B.      **Calculation of the Lodestar Amount**

The Court, in its discretion, may award attorneys' fees as part of the costs "[i]n any action or proceeding brought under [the IDEA]." 20 U.S.C. § 1415(i)(3)(B)(I). The analysis of any fee award begins with a determination of the "lodestar" figure–the product of the number of hours reasonably expended in bringing the lawsuit and the reasonable hourly rate for work performed by similarly situated attorneys in the community. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The burden of establishing that the fee request is reasonable falls on the fee applicant, here, the plaintiffs, who must provide the court with "specific and detailed evidence" in an organized fashion. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1291, 1303 (11th Cir. 1988). The plaintiffs must thus establish that the fees do not arise from "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. On the other

hand, the party objecting to a fee request, here the school board, must supply the court with "specific and reasonably precise" proof of hours that it contends should be excluded. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). At the outset the Court notes that neither party was particularly adept at presenting clear, precise, or organized proof on the issue of fees.

Nonetheless, in what follows, the Court will first assess, in turn, the reasonableness of amounts claimed by each of the four law firms that have worked on this case.[2] This first analysis will focus solely on the reasonableness of the hours spent on the actual tasks performed and the reasonableness of the hourly fees requested. Once this figure is determined, that preliminary amount will be considered in light of the results that were ultimately obtained by the parents.

### 1.   Work Performed by Paul Liles (and James Moon)

The plaintiffs request fees to be awarded for the work performed by lawyers from the first firm they retained, Alvarez, Sambol, Winthrop & Madison, P.A. That request totals $54,535.00 for 239.7 hours of work performed between January 2007 and June 2008, mostly by attorney Paul Liles. Although the fee award now sought with respect to the work performed by Liles is limited to his efforts in pursuing the federal litigation, the Court notes at the outset that Liles's supporting affidavit seems mostly confined to justifying work he performed at the administrative level (for which a fee has already been awarded). His missives regarding the difficulties, obstacles, and successes at that

---

[2]In determining the reasonableness of the requests, the Court may consider variously the lodestar factors as enumerated in *Johnson v. Ga. Hwy. Express*: (a) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. 488 F.2d 714, 717-19 (5th Cir. 1974).

level are not particularly helpful in the justifying the fees he incurred at the district court level.

### a.       Liles and Moon's Rates

The majority of Liles's time was billed at $225 an hour, while a small portion, 12.5 of his 239.4 hours, was billed at $275 an hour. Although the school board notes that the Court found $225 an hour to be a reasonable rate for Liles's work during the administrative phase of this matter, it does not actually raise any objection to either rate. The school board also voiced no concern about the $150 an hour rate charged by Liles's associate, attorney James E. Moon, for his minor role in the litigation. Based on its experience with similar matters and considering the lack of objection by the school board, the Court finds nothing unreasonable about the aforementioned rates.

### b.       Liles's Hours

The school board objects to the total fee award for Liles's work for a number of reasons. Among its objections are that the school board should not have to pay for: (a) hours Liles incurred that overlapped with or related to his successor counsel since Liles withdrew from the case of his own volition; (b) time that Liles spent attending IEP meetings; (c) excessive time that Liles spent on various tasks; (d) time spent for an interview with The Miami Herald; (e) activities related to: the Florida Department of Education, an independent educational evaluation, and a new due process filing related to another IEP that had been developed but which was not the subject of the instant action. Although the Court finds some of the school board's objections to be conclusory and lacking in the particularity required to persuade the Court to find in its favor, in many instances, the school board's points are well taken.

For example, the Court agrees that the school board should not be responsible for overlapping fees incurred during the transition from one counsel to another when Liles withdrew from the case.

The parents do not dispute the school board's determination that the hours Liles billed after his withdrawal, on May 14, 2008 are essentially devoted to facilitating the transition to new counsel. As such, the Court will exclude these hours from any fee award. Thus the ten hours that Liles billed, at $275 an hour, from May 15 through June 4, 2008, or $2,750, will be subtracted from his total.

The Court also agrees with the school board that it would be unreasonable to award the plaintiffs fees that Liles incurred for various tasks that appear to be unrelated to the federal litigation. For instance, a number of Liles's entries indicate time that was spent on: interviews with the Miami Herald; activities involving the Florida Department of Education; an independent educational evaluation; and considerations of a new due process filing. Without any explanation offered by the plaintiffs in reply as to how these activities relate to the litigation, the Court does not find that any of the aforementioned tasks were useful or necessary to further the instant proceedings before the district court. Further, upon its own consideration of Liles's billing records, the Court notes that Liles spent an inordinate amount of his time, billing at his attorney rate, on administrative scheduling issues related to various conferences, hearings, and mediation.

Because of these billing issues, the Court finds another reduction warranted, on top of the exclusion of time spent on the transition of counsel. Since many the objectionable entries are lumped together, however, with others, it is impossible for the Court to ferret out the specific fees to be excised from the plaintiffs' fee award. Nevertheless, the school board should not be penalized for such imprecisions and so based on the Court's own knowledge, experience, and careful consideration of the record, the Court will reduce Liles's remaining fees by 30%. Thus, after eliminating the $2,750.00 from Liles's total fee request, leaving $51,785.00, the Court will subtract another $15,535.50 (or 30% of $51,785.00). This leaves the fee award associated with the tasks that Liles

performed preliminarily calculated as **$36,249.50**.

On the other hand, the school board's remaining objections do not warrant further reductions in the fee award associated with Liles's work. For example, the school board takes issue with the number of hours Liles billed to prepare various filings and suggests reducing Liles's total hours by some 80%. In particular, the school board found it particularly egregious that Liles spent 87.8 hours drafting a 22-page proposed order and 21.5 hours drafting a response to the school board's filing. Without offering any support, the school board summarily claims that these amounts are excessive and suggests reducing those particular figures to 30 and 10 hours, respectively. While the Court finds that the hours spent by Liles seem on the high side, without more specificity from the school board, the Court is unable to conclude that the number of hours was necessarily excessive. The underlying final order prepared by the administrative law judge was well over 100 pages long. Further, as evidenced by the number of hours spent by opposing counsel, this case was litigated particularly vigorously by both sides. Setting aside, for the moment, any analysis of the results obtained in relation to overall time spent, the Court is unable to find, based on the school board's presentation and the Court's own examination of the billing records, that further reductions of Liles's hours are warranted based on the actual tasks that were performed.

The Court is equally unpersuaded by the school board's presentation that fees should not be awarded for time Liles spent attending an administratively ordered IEP meeting. The school board argues that, because that IEP later became moot, no fees should be awarded. The school board has not cited any support for this notion, nor has the Court been able to find any. Again, without more, the Court will not further reduce the fee award on this basis.

9

2.      **Work Performed  by Battaglia, Ross, Dicus & Wein, P.A.**

a.      **The Battaglia Firm's Rates**

The Battaglia firm submitted bills for the work of three attorneys and one law clerk. Two of the attorneys, Timothy W. Weber and Stephen J. Wein were billed at $300 an hour; another, Laura Whiteside, at $220 an hour; and a law clerk at $120 an hour. The school board perfunctorily suggests applying a rate of $225 an hour to attorney Weber's time but neglects to offer any support for how it arrived at that number. No objection was made to any of the other timekeepers' rates. Based on its review of the affidavits and other submissions by the parties and the record in this case, the Court finds the aforementioned rates reasonable and therefore no rate reduction is warranted.

b.      **The Battaglia Firm's Hours**

The total fee award request for the Battaglia firm is $44,982.00. This amount represents: 102 hours spent by attorney Timothy Weber at $300 an hour, totaling $30,600.00; 51.3 hours spent by attorney Laura Whiteside at $220 an hour, totaling $11,286.00; 6 hours spent by attorney Stephen Wein at $300 an hour, totaling $1,800.00; and 10.8 hours spent by law clerk Robert Chapman at $120 an hour, totaling $1,296.00.

One of the school board's contentions regarding this portion of the fee request is that a reduction should be applied for the time spent by the firm in getting up to speed on the case after the withdrawal of prior counsel. The school board also complains that the charges incurred by the firm between September 3, 2008 until April 9, 2009 should not be awarded since they do not appear to have been involved in, or at least related to, the federal action. The plaintiffs reply that the school board's objections are lacking in content, vague, and conclusory.

The Court agrees with the school board regarding its complaint about the time spent by the

Battaglia firm to get up to speed on the case. It would be unreasonable to saddle the school board with the costs necessitated by the transition of the case from one firm to another. Considering the voluminous record in this case, the Court can only imagine that quite some time was required for a firm taking over the case midstream to get caught up.

Furthermore, in reviewing the firm's time entries, the Court notes that many of them are vague and lacking in specificity. Just about every single entry of the close to one hundred or so submitted include the "REVIEW" of something: quite often simply the "FILE." for example, one entry just reads: "VARIOUS EMAILS" (DE 239-2, 13); another, in its entirety, only: "RESEARCH" (DE 239-2, 15); yet another, simply: "REVIEW LETTER" (DE 239-2, 23). While these types of entries might suffice for an attorney-client relationship, in terms of justifying a fee award to a court, the entries are problematic. In seeking a fee award, a party must support its request with "specific and detailed evidence" in an organized fashion. *Norman*, 836 F.2d at 1303. In aiding a court in its assessment, counsel's records should show the amount of time spent on the various claims at issue and "the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 437 n. 12). While the Court often permits wide latitude in satisfying this requirement, quite a few of the Battaglia firm's entries fall far short. Many of the entries are not nearly specific enough to allow the Court "to determine if the hours claimed are unreasonable for the work performed." *See Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1989)(quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983).

Because of these shortcomings, the Court cannot conclude that all of the Battaglia's firms hours for which reimbursement is sought are reasonable. Between the amount of time the Court

11

estimates the Battaglia firm spent on transitioning the case from one firm to another and the number of timekeeper entries that are so vague as to be incapable of assessment, the Court, based on its own review and expertise, will apply an across-the-board reduction in fees of 15%. Based on this reduction, the preliminary fee award associated with the Battaglia firm, without regard to the outcome in this case, would be **$38,234.70** (or $44,982.00 reduced by 15%).

On the other hand, the Court finds the school board's other objection to be without merit. The school board makes the conclusory statement that the services rendered by the Battaglia firm between September 3, 2008 to April 9, 2009 were unrelated to the plaintiffs' obtaining relief. In support of this, the school board offers only that the plaintiffs prepared nothing for filing in the case during that time period. This, without more, does not establish that the work done was not related to the plaintiffs' federal action and therefore no further reduction is warranted for the Battaglia firm's fees.

### 3. Hours Billed by the Law Office of Matthew Dietz, P.L.

The Law Offices of Matthew W. Dietz, P.L. has submitted invoices for four attorneys totaling $149,451.50 incurred from May 17, 2009 until the filing of this fee petition. The number of hours amounts to 604.6, comprised of the work of four attorneys broken down as follows: 173.4 hours for attorney Dietz; 295.7 hours for attorney Langer; 109.4 hours for attorney Alvarez; and 26.1 hours for attorney Goldstein. While the school board contends that Dietz's hourly rate should be trimmed and that a reduction of the overall fee is warranted because of certain delays and transition costs, it does not otherwise raise any issues of reasonableness of the time billed based on the tasks performed.

### a. The Dietz Firm's Rates

The school board has not objected to the rates charged by attorneys Langer, Alvarez, and

Goldstein and, upon review, the Court finds their rates all to be reasonable. The school board does, however, object to attorney Dietz's hourly rate and notes that although Dietz's retainer agreement states that his rate is $350 an hour, the invoices submitted show Dietz billing at $385 an hour. In response, the plaintiffs argue that it is not unreasonable for an attorney's rate to increase 10% over the relevant time period. While this may be true, it does not explain the 10% increase from the date of the retainer agreement, May 17, 2009, to the date of the first time entry, May 29, 2009, less than two weeks later. The Court will not insist that the school board pay any more than the evidence establishes that Dietz's clients had actually agreed to pay. Dietz's hourly rate will therefore be reduced then from the requested $385 to $350 an hour. Applying such a reduction, from $385 an hour to $350 an hour, would result in a decrease of the total sought for the Dietz firm by $6,069.00 (the number of hours submitted by Dietz, 173.4, multiplied by $35 (or $385 minus $350)). Based on this reduction of Dietz's hourly rate, the preliminarily revised total for the Dietz firm is **$143,382.50** (or $149,451.50 minus $6,069.00).

### b.       The Dietz Firm's Hours

The school board complains that the entry of the Dietz firm part way into the litigation resulted in yet more duplicative hours spent in transitioning yet another firm into the case. The school board contends that $4,620.00 in duplicative charges were incurred by reason of the changeover from the Battaglia firm to the Dietz firm. With no counter argument offered by the plaintiffs, the Court finds this reduction warranted.

Setting aside, for the moment, any further reduction justified by an assessment of the fees requested in light of the results obtained, the preliminarily calculated award apportioned to the Dietz firms is then **$138,762.50** (or $143,382.50 minus $4,620.00).

### 4.    Hours Billed by Mayerson & Associates, P.C.

Mayerson & Associates, P.C. served as co-counsel to the Dietz firm from October 8, 2008 until June 20, 2011. During this period, the Mayerson firm submitted bills for six timekeepers for 200.5 hours, totaling $99,166.00 in fees.

### a.    The Mayerson Firm's Rates

The school board claims that the rates charged by the Mayerson firm are excessive based on the relevant market of South Florida. The plaintiffs, on the other hand, argue that the rates charged are justified by the firm's attorneys' extensive experience and expertise in the representation of students with autism spectrum disorders. Further, Gary Mayerson, in his affidavit, in order to establish the reasonableness of his $600 an hour rate, cites a number of cases from the Southern District of New York that would support such an award.

The Court finds that the plaintiffs' and Mayerson's submissions on this point miss the mark. "The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *ACLU of Georgia v. Barnes,* 168 F. 3d 423, 437 (11th Cir. 1999) (internal quotations omitted). In order to recover their non-local rates, the Mayerson time-keepers, all practicing in New York, would have to show that there were no attorneys in South Florida who could have handled the case. *Id.* While the Court agrees that the Mayerson attorneys provided specialized expertise and experience relevant to this case, that does not establish the absence of local attorneys who were willing and able (and who in fact did) provide comparable services. The plaintiffs are not entitled to reimbursement for the fees charged by "an attorney with the most expertise on a given legal issue, regardless of price," but rather are limited to fees charged by attorneys "with reasonable expertise at the [relevant] market rate." *Id.* As

14

established through the affidavits of the other attorneys who have appeared in this case, clearly competent local counsel were available to handle the plaintiffs' case. It would be unreasonable, therefore, to award non-local attorneys' rates in this case.

The school board suggests that, to the extent the Court awards any fees for work done by the Mayerson firm, $225 an hour would be an appropriate rate for "all lead lawyers in the case" as that is the rate that was awarded to Paul Liles for his work in the administrative phase of the case. In reply, the plaintiffs refuse to budge from their stance that the Mayerson firm's expertise warrants applying the rates requested: $600 an hour for attorney Mayerson; $425 an hour for attorney Walsh; $295 an hour for attorney Dotts; $270 an hour for attorney McGinley; $150 an hour for paralegal Bertone; and $125 an hour for paralegal Disla.

Because they are based on the rates for an out-of-state market, the Court will disregard the rates proposed by the Mayerson firms. On the other hand, the Court finds $225 an hour, as proposed by the school board, to be unreasonably low considering the expertise and experience of attorney Mayerson. The plaintiffs have submitted that $385 an hour for someone with attorney Dietz's experience and qualifications is reasonable for this type of litigation in South Florida – the relevant market. Based on the length of time that both Dietz and Mayerson have been practicing civil rights focused litigation and their successes in starting their own firms, and considering their comparably impressive resumes, the Court is persuaded that $385 an hour would be a reasonable local rate for someone of Mayerson's caliber. Although Dietz has specialized in civil rights type litigation for longer than Mayerson, the Court finds that Mayerson's extensive general litigation experience, prior to his civil rights work, more than makes up for that disparity and warrants awarding the plaintiffs $385 an hour for Mayerson's work. This figure is also in line with the Court's own experience and

15

knowledge of rates applicable in similar circumstances.

With respect to attorney Walsh's rate, while the school board objects to Walsh's requested New York rate of $425 an hour, it does not appear to suggest an otherwise acceptable rate for her. The parties have thus left the Court with very little guidance regarding the determination of an appropriate rate for Walsh.  The plaintiffs have, however, established to the Court's satisfaction that someone of attorney Langer's skill and experience warrants a rate of $225 an hour. Though Langer has specialized in education-related law for longer than Walsh, the Court finds that Walsh's prior litigation experience would warrant applying a similar rate to the work done by both attorneys. The Court agrees with the plaintiffs that applying a rate of $225 an hour for an attorney of this expertise and skill level would be more than reasonable.

With respect to the other two Mayerson attorneys involved in the case, Dotts and McGinley, the parties have again left the Court with very little guidance: the plaintiffs insist on applying New York rates while the school board argues that local rates, though none are specifically suggested, should apply. Based on its experience and familiarity with the fees charged by other, similarly situated lawyers, the Court finds that rates of $185 and $175 an hour, respectively, would be reasonable for these two junior-level associates.

No objection was made to the rates requested for the two paralegals who briefly worked on the case and thus the Court will award the requested rates of $150 and $125 an hour for both Bertone and Disla.

Recalculating then, the Mayerson firm's request in light of the Court's determinations of the appropriate hourly rates for these timekeepers, the Court determines as follows. That portion of the fee request attributable to attorney Mayerson is reduced from $50,520.00 (or Mayerson's 84.2 hours

16

multiplied by $600 an hour) to $32,417.00 (or 84.2 hours multiplied by $385 an hour). That portion attributable to attorney Walsh is reduced from $47,047.50 (or 110.7 hours multiplied by $425 an hour) to $24,907.50 (or 110.7 hours multiplied by $225 an hour). That portion attributable to Dotts is reduced from $1475.00 (or 5 hours multiplied by $295 an hour) to $925.00 (or 5 hours multiplied by $185 an hour). That portion attributable to McGinley is reduced from $81.00 (or .3 hours multiplied by $270 an hour) to $52.50 (or .3 hours multiplied by $175 an hour). Keeping the paralegal rates the same but incorporating the above changes results in a reduction of the Mayerson firm's request to **$58,344.50** (or $32,417 for Mayerson; plus $24,907.50 for Walsh; plus $925.00 for Dotts; plus $52.50 for McGinley; and plus $42.50 for the paralegals).

### b.       The Mayerson Firm's Hours

The school board submits that the Court should not award any of this fee request because the vagueness of the Mayerson firm's billing records prevents determining whether the work performed was duplicative of work performed by other attorneys. The plaintiffs, in response, justify their hiring of the Mayerson firm because of its exceptional expertise in issues involving autism. The plaintiffs also point out that the Mayerson firm and the Dietz firm handled entirely different tasks. Lastly, the plaintiffs object to the school board's failure to itemize any particular area of alleged duplication.

The plaintiffs' criticism that the school board neglected to cite any particular entries as being unduly vague is well taken. Based upon its own review of the record, the Court does not find the Mayerson firm's billing records to be overly vague.

On the other hand, the Court notes that the records indicate that there was likely some overlap of work and unnecessary duplication of efforts or inefficiencies necessitated by the Mayerson's role as co-counsel. To highlight a few examples, the Court notes that both firms devoted a not

insignificant amount of time to closing arguments. The Dietz firm devoted at least eight hours to this task (DE 239-3, 52-53) while the Mayerson firm has submitted close to fifteen hours (DE 239-4, 33). Another example of such duplication, or at least inefficiency, is the submission by both firms for time spent in preparing a motion for a protective order on the same day. (*E.g.*, compare the February 10, 2010 entries for both firms (DE 239-3, 29 and DE 239-4, 29)). Thus, although "a fee applicant is entitled to recover for the hours of multiple attorneys," the applicant must satisfies its "burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case." *ACLU of Georgia*, 168 F.3d at 432. Although examples of the plaintiffs' failure to satisfy this burden, as recounted above, do not appear to dominate the billing records by any stretch, they are also not insignificant. Thus the Court will decline to take the school board up on its suggestion that the entirety of the Mayerson firm's fee request be altogether denied. Still, the Court finds it would be unreasonable for the school board to be charged for such redundancies and inefficiencies, resulting from the plaintiffs' hiring of an additional firm, which the Court estimates account for 10% of the firm's fee request. Applying an across the board reduction to the Mayerson firm's fee request of 10% results in a lodestar of **$52,510.05** (or $58,344.50 minus 10%).

### 5.    Summary of Preliminary Calculation of the Lodestar Amount

Based on the calculations above, the Court finds that, prior to any overall reductions for other factors, the fees allotted to the various firms are as follows:

| Firm or Attorneys | Preliminary Fee |
| --- | --- |
| Liles (and Moon) | $ 36,249.50 |
| Battaglia, Ross, Discus, & Wein | $ 38,234.70 |
| Law Offices of Matthew W. Dietz | $138,762.50 |

| Mayerson & Associates | $ 52,510.05 |
| TOTAL: | **$265,756.75** |

Thus, based on the submissions of the parties and the Court's review thereof, and based on the Court's own knowledge and expertise in such matters, $265,756.75 is deemed to represent a reasonable fee for the work that was actually performed by counsel in this case. This amount takes into consideration what the Court has determined to be reasonable hourly rates for the timekeepers involved in the litigation as well as the exclusion of hours that the Court has deemed to be "excessive, redundant, or otherwise unnecessary." *See Hensley*, 461 U.S. at 434. As detailed above, some of those hours, or categories of hours, were capable of reduction by an amount certain while others, because of the quality, or lack thereof, of the time entries, were reduced by an across-the-board cut.

### C.   <u>Adjustment to the Lodestar Amount</u>

The calculation of the lodestar amount, as detailed above, does not, as the Supreme Court has said, end the inquiry. *See id*. Other considerations may result in an adjustment in the lodestar. *Id*. Although many of these considerations, factors identified in *Johnson v. Georgia Highway Express, Inc.*, have already been subsumed into the Court's preliminary calculation, an assessment of the fees in light of the results obtained, has not. 488 F.2d 714, 717-19 (5th Cir. 1974). Since the plaintiffs here have only prevailed on some of their claims for relief, this is a crucial factor. Ultimately, the Court must determine whether the relief that was finally obtained justifies the efforts expended by counsel.

Here, there were two general aspects to the relief that the parents sought at the district court level. First was a review of the administrative law judge's opinion; and second was a determination

of the plaintiffs' damages, expenses, fees, and costs. As set forth in more detail above, in Section I, in relation to the district court's review of the administrative law judge's opinion and the plaintiffs' objections thereto, the plaintiffs prevailed in very few of their challenges. Although they succeeded in their challenge to the propriety of O.L.'s placement at Palmetto Senior Highschool, notably they lost on their continued quest to have O.L. placed at MAST Academy.[3] In sum, the plaintiffs failed in the vast majority of their procedural and substantive objections to the administrative law judge's opinion.

With respect to the second aspect of the federal litigation, the parents were awarded less than five percent of the overall damages they sought ($48,326.35 out of the over $1 million initially sought). They were further awarded only one quarter of the fees and costs they sought in compensation for legal work performed in handling the administrative proceedings ($35,435.64 out of $138,385.26).

Even in the face of such an obvious imbalance between the results obtained and the efforts expended and the relief requested, the plaintiffs insist that they be fully reimbursed, as if they had obtained exceptional results. The Court finds that the plaintiffs were unrealistic in the relief they sought which resulted in their expending excessive efforts. However, because of the interrelated nature of the claims, a reduction on a claim-by-claim basis would be impossible. Instead, the Court has considered the significance of the overall relief obtained in relation to the efforts expended on the litigation as a whole, including any actions taken by the plaintiffs or their counsel that resulted in protracting the resolution of this matter. Although the dollar amount actually obtained by the

---

[3]Although the plaintiffs insist that placement at MAST was not at issue in the district court litigation, as can be seen by Judge Torres's Report and Recommendation, that is clearly not the case. (DE 43, 48-52.)

plaintiffs was quite unremarkable in light of what they sought, it was significant nonetheless. Further, the plaintiffs also obtained meaningful relief with respect to the administrative law judge's opinion. Lastly, the school board provided a vigorous defense, in some instances overly so, which required a robust effort and response from plaintiffs' counsel, even on the claims that were ultimately meritorious. Taking these factors into consideration, the Court will not reduce the fee award sought as much as might be expected if one only considered that the plaintiffs were awarded less than ten percent of the overall damages, fees, and costs they sought. Instead, factoring in the other more intangible components at play in this litigation, the Court finds that a reduction of only fifty percent of the lodestar is warranted. Thus, the preliminarily calculated amount from Section II., above, is reduced to **$132,878.38** (or 50% of $265,756.75).

### III.   <u>The School Board's Offer of Judgment</u>

The school board also argues that plaintiffs cannot recover fees because the school board sent an offer of judgment, on May 13, 2010, pursuant to 20 U.S.C. § 1415(i)(3)(D)(I), in the amount of $150,000.00, which the plaintiffs rejected. The school board claims that since the plaintiffs have only recovered $48,326.35 in substantive relief and $35,435.64 in fees and costs for the administrative hearing, the relief obtained by the parents is not more favorable than the offer of settlement. The plaintiffs counter that so long as they recover at least $66,238.01[4] for fees incurred prior to the date of the offer, they are entitled to a fee award.

Based on the fee award as calculated above, there is no question that the plaintiffs' recovery will surpass the $66,238.01 threshold. Before even adding in the fees awarded for work done by the

---

[4]$66,238.01 is equal to the difference between the offer of $150,000 and the sum of the substantive relief ($48,326.35) and the fees and costs ($35,435.64) awarded for the administrative proceedings.

Dietz and Mayerson firms prior to May 13, 2010, the fee awards for Liles and the Battaglia firms alone, which both concluded their services prior to the settlement offer, amount to over $74,000.00. And this doesn't even account for any costs that will be awarded. The school board's reliance on the offer of judgment, therefore, is unavailing.

## IV.   Costs

Next addressed is the plaintiffs' claim for costs in the amount of $12,202.31. The plaintiffs have again cited to Eleventh Circuit's opinion in *Dowdell v. City of Apopka* for the proposition that various costs beyond those enumerated in 28 U.S.C. § 1920 are recoverable in IDEA cases. 698 F.2d 1181 (11th Cir. 1983). *Dowdell*, however, specifically dealt with a case in which the prevailing plaintiffs' sought fees and costs under 42 U.S.C. § 1988; not, as here, under 20 U.S.C. § 1415. That case, therefore, focused on the interpretation of a different statutory scheme. The Supreme Court, on the other hand, has directly opined on the limits of recoverable costs under the IDEA. Justice Alito's opinion for the majority in *Arlington Central School District Board of Ed. V. Murphy*, specifically found that the costs recoverable by prevailing IDEA plaintiffs, other than attorneys' fees, are strictly limited to the list of costs set forth in 28 U.S.C. § 1920. 548 U.S. 291, 297-98 (2006). The plaintiffs have not provided any support for their conclusion that the Court should disregard the limits of recoverable costs as outlined in this opinion. The recoverable costs then are limited by section 1920 to the following:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Any costs that are not specifically listed are not taxable to the school board.

The plaintiffs concede that of the $2,197.80 in costs submitted for attorney Liles, $564.50 of those costs are not properly documented. The remaining amount attributable to Liles, then, is **$1,633.30** which plaintiffs state covered the costs of copies of O.L.'s school records that were used in this case. The Court finds this amount to be properly taxable to the school board.

The plaintiffs also concede that the $965.48 sought by the Battaglia firm is also not properly documented and therefore are found to be not taxable either.[5]

With respect to the $5,547.67 sought by the Dietz firm, many of the costs requested are not taxable. First, there is no statutory authority for taxing the costs of "courier services," "facsimiles," "postage," and "parking," as the plaintiffs have requested and therefore the amounts requested in those categories ($13.44, $95.00, $53.00, $48.39) will not be awarded.

Regarding the remainder of the Dietz firm's costs, the school board does not object to the requests for deposition and hearing transcript costs in the amount of **$3,302.29** and the Court further finds those to be taxable costs since there has been no indication that those transcripts were not necessary for use in the case. Likewise, the school board does not object to the request by the Dietz firm for **$1,287.25** in printing costs. Upon its own review of those costs and attorney Dietz's declaration that the printing costs were necessarily incurred in this case, it appears that this amount is also properly taxable to the school board. Lastly, contrary to the school board's complaint, the

---

[5]The Court notes that Attorney Dietz should take more care in affirmatively attesting to the propriety of costs submitted on behalf of other attorneys, specifically the Liles and Battaglia costs, which are then so readily conceded as being insufficiently documented.

Court does not find the plaintiffs' request for photocopying costs or filing fees to be improperly explained or otherwise unsupported. The **$673.30** requested for photocopying and the **$75.00** requested for filing fees are therefore also properly taxable. In sum, **$5,337.84** in costs (the sum of $3,302.29; $1,287.25; $673.30; plus $75.00) is properly taxed against the school board for costs incurred by the Dietz firm.

Neither the travel costs (in the amount of $3,360.38) not the Federal Express charges (in the amount of $44.28) attributable to the Mayerson firm are taxable costs under section 1920. There appears to be no specific objection by the school board as to the photocopying charges and upon its own review, the Court finds these costs (or **$86.70**) properly taxable.

In sum then, as detailed above, **$7,057.84** in costs is properly taxed against the school board.

## V.    <u>Conclusion</u>

O.L.'s parents were the prevailing parties in this litigation and as such are entitled to recover their reasonable fees and costs from the school board under 28 U.S.C. § 1415(i)(3)(B)(i). Based on the issues and factors outlined above, however, their requests for $348,135.50 in fees and $12,202.31 in costs are reduced to **$132,878.38** and **$7,057.84**, respectively.

Accordingly it is ORDERED that:

1.    The parents' Motion for Attorneys' Fees and Costs (DE 239) and Bill of Costs (DE231) are GRANTED, subject to the reductions as described above; and

2.      The parents shall recover from the school board **$139,936.22** in fees and costs.

DONE AND ORDERED in Chambers at Miami, Florida this 17th day of May 2013.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE